598 A.2d 616

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**James F. AXSOM, Jr., Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 14, 1991.

Decided Oct. 18, 1991.

100

Timothy P. Wile, Asst. Counsel-in-Charge of Appellate Section, for appellant.

No appearance for appellee.

Before DOYLE and PELLEGRINI, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

The Department of Transportation (Department) appeals from an order of the Court of Common Pleas of Chester County. That court vacated its previous order entered on June 28, 1990 and sustained the appeal of James F. Axsom, Jr. from a one-year suspension of his operating privileges imposed by the Department pursuant to Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b).[1]

1. Section 1547(b) of the Vehicle Code provides for the suspension of a driver's operating privileges for a period of one year upon the refusal to submit to a chemical test to determine blood alcohol content.

The pertinent facts are as follows: On February 11, 1990, Officer Joseph V. Carabba of the West Goshen Township Police Department responded to a report of an accident. Upon arriving at the scene, Officer Carabba noticed a vehicle that appeared to be involved in an accident. The police officer was then directed to a nearby house and upon entering the house, found Axsom. Axsom admitted operating the vehicle and was then transported to Chester County Hospital by ambulance for treatment of his injuries.

At the hospital, Officer Carabba presented to Axsom the implied consent form which Axsom signed. Officer Carabba next presented to Axsom a form entitled "CONSENT FOR ALCOHOL OR DRUG SCREENING." That form provides as follows:

> I, the undersigned, do hereby consent to have blood withdrawn or urine obtained by The Chester County Hospital to determine the alcohol and/or drug content of my blood and/or urine. I understand that the results of this test may be presented as evidence in any subsequent civil or criminal action, and I release The Chester County Hospital, nurses, technicians, assistants and members of the hospital staff performing the withdrawal of blood or obtaining a urine specimen from any liability and claims as a result of such use.

Officer Carabba's testimony at the de novo hearing before the court may be summarized as follows: The officer read the hospital form to Axsom and Axsom then became agitated. An employee of the hospital entered the treatment area and advised Axsom to be quiet. Officer Carabba again attempted to read the form to Axsom and he again became loud. The hospital employee then returned and told Axsom that he should either be quiet or he could leave. At this point, Axsom left the hospital emergency room. Officer Carabba followed Axsom out of the emergency room and advised him that his leaving would be considered a refusal of the blood test. Axsom did not acknowledge Carabba, did not return to the hospital nor did he acknowledge the hospital form.

Axsom, on the other hand, testified that he did not understand the hospital form and asked Officer Carabba several times to explain it. Axsom further testified that the police officer did not give him any explanation of the form, and that when he requested an explanation the officer would instead start to read the form again. Axsom testified that he left the emergency room after the hospital employee informed him that if he did not calm down he could leave. Axsom also testified to a conversation with Officer Carabba which took place after he left the hospital.

*Direct Examination*

Q. Tell me what happened in that conversation?

A. He said to me again, "We just want to get permission to take blood." I said, "I don't care about taking the blood. I already gave you permission to take the blood," and that's—

Q. Okay.

A. He kept saying it was permission when, actually, I knew it was a release, but he wouldn't address that part of the statement on the sheet of paper.

*Cross Examination*

Q. Did you say, "I don't want to sign the form?"

A. Unless someone explained it to me.

Q. Did you ever say that, "I don't want to sign the form?"

A. I don't know if I said that specifically, just like that. I asked that it be explained.

Q. You never said, "I'll give blood, but I won't sign the form," did you?

A. Yes, I think I did say that.

Q. When did you say that?

A. Probably on several occasions.

Both witnesses testified that Officer Carabba did *not* tell Axsom that he could have his blood drawn without signing the hospital form.

At the conclusion of the hearing, the common pleas court dismissed Axsom's appeal. The court found that Axsom

had terminated his consent by leaving the hospital and that Axsom's refusal to return to the hospital "makes moot the issue of the hospital form, because, at that point, the defendant clearly had not given his unqualified, unequivocal assent to take the test."

On July 9, 1990, Axsom filed a "Motion for Post–Trial Relief Pursuant to Pa.R.C.P. No. 227.1." On December 6, 1990, the common pleas court issued an opinion in which it construed the motion as being a motion for reconsideration which it then granted. The court there found that our decision in *Maffei v. Department of Transportation*, 53 Pa.Commonwealth Ct. 182, 416 A.2d 1167 (1980), was controlling and that Axsom's refusal to execute the hospital form was not a refusal to consent to a blood test. The court vacated its prior order and sustained Axsom's appeal. Appeal to this Court followed.

On appeal, the Department raises two arguments: 1) that the common pleas court lacked jurisdiction to issue its order of December 6, 1990; and 2) that Axsom's refusal to sign the hospital form constituted a refusal to submit to a blood test for purposes of 75 Pa.C.S. § 1547.

The Department first argues that the common pleas court lacked jurisdiction pursuant to Section 5505 of the Judicial Code, 42 Pa.C.S. § 5505, to vacate or otherwise modify an order more than thirty days following the entry of that order. Section 5505 provides as follows:

**Modification of orders**

Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

In the instant case, the trial court entered its order dismissing Axsom's appeal on June 28, 1990. Axsom did not appeal to this Court pursuant to Section 762(a)(3) of the Judicial Code, 42 Pa.C.S. § 762(a)(3). Instead, Axsom filed a "Motion for Post-trial Relief Pursuant to Pa.R.C.P. 227.-

1.," the filing of which motion is available only in civil actions, not in statutory appeals. *Department of Transportation, Bureau of Driver Licensing v. Zurka,* 135 Pa.Commonwealth Ct. 238, 580 A.2d 466 (1990).

 Where a motion for post-trial relief is improvidently filed, it will be regarded as a request for reconsideration which, of course, does not toll the appeal period. *Scripture Union v. Deitch,* 109 Pa.Commonwealth Ct. 272, 531 A.2d 64 (1987). Unless the court enters an order granting reconsideration within the thirty-day appeal period, the power to grant reconsideration is lost. *Borough of Jefferson v. Bracco,* 113 Pa.Commonwealth Ct. 223, 536 A.2d 868 (1988), *petition for allowance of appeal denied,* 522 Pa. 597, 562 A.2d 321 (1988) (citing 1 Darlington, McKeon, Schuckers, Brown, Pennsylvania Appellate Practice § 1701:19 (1986)). In the instant case, the common pleas court granted reconsideration on December 6, 1990, a date well beyond the thirty-day period in which it had to grant reconsideration.

In its opinion in support of its December 6, 1990 order, the common pleas court stated that it failed to perceive properly the facts in issuing its order on June 28, 1990, and this failure created an extraordinary circumstance entitling Axsom to relief beyond the thirty-day period.

 It is well settled that courts of this Commonwealth possess inherent power to act where equity so demands. *Great American Credit Corp. v. Thomas Mini-Markets, Inc.,* 230 Pa.Superior Ct. 210, 326 A.2d 517 (1974). In such situations, the power of the court to open and set aside its judgments may extend beyond the expiration of the appeal period. *Id.* The discretionary power of the court over such judgments is, however, very limited. *Simpson v. Allstate Insurance Co.,* 350 Pa.Superior Ct. 239, 504 A.2d 335 (1986). Generally, judgments regularly entered in adverse proceedings cannot be opened or vacated after they have become final, unless there has been fraud or some other circumstances "so grave or compelling as to constitute 'extraordinary cause' justifying intervention by

the court." *Id.,* 350 Pa.Superior Ct. at 245, 504 A.2d at 337. Such circumstances have customarily entailed an oversight or act by the court, or failure of the judicial process, which operates to deny the losing party knowledge of entry of final judgment and commencement of the running of the appeal period. *DeMarco v. Borough of East McKeesport,* 125 Pa.Commonwealth Ct. 13, 556 A.2d 977 (1989), *petition for allowance of appeal denied,* 525 Pa. 614, 577 A.2d 545 (1990).

In *Commonwealth v. Sheppard,* 372 Pa.Superior Ct. 550, 539 A.2d 1333 (1988), the Superior Court considered whether a trial court may vacate its order more than thirty days after its entry where the trial court relied on misinformation in issuing that order. In that case, the appellant filed a motion to discharge alleging that the Commonwealth had failed to supply pre-trial discovery. The trial court, apparently assuming that the appellant had made a formal discovery request and relying upon the presence of such a formal request, issued the discharge order on March 23, 1987. Thirty-one days after the entry of the order the Commonwealth filed a petition to vacate the order. On May 13, 1987, the trial court granted the petition and vacated the discharge order. On appeal, the Superior Court reversed the order of the trial court, stating:

> [W]e cannot conclude that the court's mistaken assumption regarding the existence of a formal discovery request resulted from misrepresentations made by appellant. Accordingly, even if the court granted appellant's motion to discharge based upon "misinformation," it does not follow that appellant is responsible for that misinformation. Moreover, we are not satisfied that such misinformation is the equivalent of a fraud or other grave or compelling circumstance under *Simpson v. Allstate Ins. Co.* [350 Pa.Superior Ct. 239, 504 A.2d 335 (1986)] Because the court's mistaken assumption regarding the existence of a formal discovery request did not result from a fraud perpetrated by appellant, and because the court otherwise lacked authority to issue its May 13, 1987 order, we must

conclude that the trial court erred in vacating the March 23, 1987 order discharging appellant.

*Sheppard,* 372 Pa.Superior Ct. at 554, 539 A.2d at 1334–35.

█ We find the instant case to be analogous to *Sheppard* and we hold that the common pleas court's admitted misperception of the facts in the case and its subsequent reliance on that misperception in issuing its order do not constitute "extraordinary cause" so as to justify an extension of the time limitation in Section 5505 of the Judicial Code.

We acknowledge the apparent harshness of our holding; we also acknowledge the need "to establish a point at which litigants, counsel and courts ordinarily may regard contested lawsuits as being at an end." *Simpson,* 350 Pa.Superior Ct. at 244, 504 A.2d at 337. It must be remembered that Axsom could have appealed the June 28, 1990 order to this Court, but did not. Accordingly, we do not reach the substantive issue of whether the execution of the hospital form is an additional requirement not provided for in Section 1547.

The order of the common pleas court entered December 6, 1990 is vacated and we reinstate the common pleas court's order of June 28, 1990.

## ORDER

NOW, October 18, 1991, the order of the Court of Common Pleas of Chester County entered December 6, 1990 is hereby vacated and the order of the Court of Common Pleas of Chester County entered on June 28, 1990 in the above-captioned matter is hereby reinstated.