**Marshall R. BARBOUR**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 22, 1997.
Decided Sept. 29, 1997.
Reargument Denied Nov. 25, 1997.

---

Timothy P. Wile, Assistant Counsel In-Charge, Harold H. Cramer, Assistant Chief Counsel, Harrisburg, for appellant.

Martin W. Sheerer, Pittsburgh, for appellee.

Before DOYLE and McGINLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The Pennsylvania Department of Transportation (DOT) appeals an Allegheny County Common Pleas Court order sustaining the appeal of Marshall Barbour (Licensee) from a one-year suspension of his motor vehicle operating privileges for failure to submit to chemical testing under Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547. We reverse.

This case arises from the following circumstances. In November 1995, Licensee was arrested for driving while under the influence of alcohol and transported to a hospital for the administration of chemical testing.[1] The arresting officer asked Licensee to supply a blood sample and adequately warned him that a refusal to do so would result in a one-year suspension of his driver's license. Licensee refused the request and DOT subsequently notified him of a suspension.

Licensee appealed the suspension to the trial court. He submitted a deposition of Dr. Scott Celin in support of his claim that he was unable to make a knowing and conscious refusal of the test due to injuries he suffered in the course of his collision immediately prior to his arrest. The trial court initially ordered Licensee's appeal dismissed on May 9, 1996. Licensee then filed a petition for reconsideration, which the trial court granted in an order dated June 8, 1996 and marked filed with the Allegheny County prothonotary on June 19, 1996. By order dated October 24, 1996, the trial court granted Licensee's appeal.[2] DOT now appeals to this Court.

Our scope of review is limited to determining whether the trial court's findings of fact were supported by competent evidence, and whether the trial court committed an error of law or an abuse of discretion. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989).

■ DOT first contends before us that the trial court lacked jurisdiction to enter its

---

1. Licensee does not dispute that he sustained facial injuries because his car struck a utility pole, that a blood sample was taken by hospital personnel for medical purposes, and that the blood alcohol content results of that sample were later subpoenaed for use in a criminal prosecution against him.

2. Licensee then withdrew an appeal he had filed with this Court on June 10, 1996.

order sustaining Licensee's suspension appeal, because the court did not vacate its May 9, 1996 order dismissing the appeal within thirty days. DOT emphasizes that, while the order vacating the May 9 order is dated June 8, it was not filed and docketed until June 19. DOT claims that an order vacating an earlier order must be "entered" within thirty days of the earlier order, and that a vacating/reconsideration order is not "entered" until docketed.

We reject DOT's argument. We simply cannot ignore the plain fact that there is an order of record, signed by the Honorable Joseph H. Ridge, stating that "this 8 day of June, 1996 ... the Order of May 9, 1996 is vacated." Although the order is marked as not having been filed with the prothonotary until June 19, and we do not condone the apparent delay indicated by that discrepancy, we do not ascribe the dispositive significance to the delay that DOT does here. Strictly from a practical point of view, we perceive no prejudice to DOT caused by the delay.[3] On the other hand, it would certainly be unfair if, through no fault of his own, Licensee were denied relief due solely to some administrative breakdown. It was obviously Judge Ridge's intent to vacate his prior order within thirty days, and his signed order in fact bears a date complying with that time constraint.[4]

Moreover, DOT has not directed us to authority for the proposition that the reconsideration order cannot be properly considered to have been entered on June 8. Section 5505 of the Judicial Code provides that "a court upon notice to the parties may modify or rescind any order within 30 days after its entry ..." 42 Pa.C.S. § 5505. The provision does not require that a reconsideration order must be marked filed with a prothonotary within 30 days, or that a reconsideration order dated and signed by a judge within 30 days may be rendered ineffectual—which is precisely what DOT would have us hold.[5] DOT's reliance on *Department of Transportation v. Axsom*, 143 Pa.Cmwlth. 99, 598 A.2d 616 (1991)[6] does not support its argument, because we emphasized that the trial court there clearly granted reconsideration well beyond the thirty-day period. In this case, we have no proper grounds to hold that the trial court did not vacate its prior order and grant reconsideration on June 8, within the thirty-day period. We therefore reject DOT's jurisdictional argument.

Having necessarily disposed of that procedural issue, we nevertheless must sustain this appeal in light of DOT's remaining argument on the merits.

■ DOT's substantive contention here is that Licensee did not produce unequivocal medical evidence that his injuries rendered him incapable of making a knowing and conscious refusal of chemical testing, and therefore failed to satisfy the burden the law places on licensees in these cases. *Department of Transportation, Bureau of Driver Licensing v. Monsay*, 142 Pa.Cmwlth. 163, 596 A.2d 1269 (1991). DOT submits we are constrained to sustain its appeal because Dr. Celin's testimony clearly supports the conclusion that Licensee's refusal was related *in part* to his consumption of alcohol.

3. Indeed, Licensee contends that DOT never raised before the trial court any objection to the reconsideration order. Licensee also suggests that, given his original timely appeal to this Court, we would have been compelled to remand the case in any event if the medical evidence he presented was not considered by the trial court when it initially upheld the suspension.

4. Contrary to DOT's statement, the order is not merely "purportedly" dated June 8, but is expressly so dated. DOT goes further and, without explanation, "questions" the June 8 date because the date fell on a Saturday. We agree with Licensee that DOT is to some extent attempting to impugn the trial court's integrity without pointing to any real basis for doing so.

5. The original order, of course, is not considered to have been "entered" until it is docketed. We confirmed in *Department of Transportation v. Weichey*, 143 Pa.Cmwlth. 19, 598 A.2d 575 (1991), *petition for allowance of appeal denied*, 530 Pa. 647, 607 A.2d 256 (1992) that the date of an "entry" of an order for purposes of the commencement of the time for appeal running against an appealing party is after the order has been docketed and a notation appears that proper notice of the entry of the order has been given.

6. *Axsom* was overruled in part on other grounds in *Shapiro v. Center Township*, 159 Pa.Cmwlth. 82, 632 A.2d 994 (1993), *petition for allowance of appeal denied*, 537 Pa. 635, 642 A.2d 488 (1994).

Licensee responds by relying on the trial court's acceptance of Dr. Celin's testimony for its conclusion that Licensee's serious head injuries rendered him unable to respond knowingly to requests for chemical testing.

While we will not interfere with the trial court's prerogative in finding the facts based on substantial evidence, a review of the record here reveals that Dr. Celin's testimony is simply not legally sufficient under the case law to serve as a basis for the court's determination. We certainly do not dismiss Dr. Celin's opinion that Licensee sustained serious head injuries which were equivalent to those of a gunshot wound, required surgery, left him unable to comprehend the significance of events at the time immediately following the collision, and more than likely caused him to be very disoriented. However, a close review of Dr. Celin's testimony shows a lack of unequivocal evidence on the most pertinent question under the case law. That question is whether Licensee was unable, due to his injuries and not to his alcohol consumption, to make a knowing and conscious refusal at the time he was asked to take the chemical test. Dr. Celin testified:

A Well, I think I have some doubt in my mind as to whether or not he would have been mentally able to understand what was being asked of him at that time. The force with which his head struck, whatever object it was, I think had to have been significant given that he has amnesia for the event that was documented, and I think persists to this day. I think that would be consistent with the clinical diagnosis of a concussion, or a closed head injury, which was one of his discharge diagnoses. And I think that there is some significant doubt as to whether or not he would have been able to comprehend of [sic] what was being asked of him at that time.

Q Okay ... if I said to you, are you able to say that he would, based upon your review here, that he would not have been able to do so within a reasonable degree of medical certainty; is that consistent with what you're saying?

A I think so. I'm not a neurosurgeon. I practice with facial trauma and facial reconstruction, so I will qualify that. But given what I do know about closed head injuries when they are severe enough to induce amnesia, patients are usually typically disoriented, they don't know exactly what's going on and they are just in a generalized—in a daze. And I think it would be difficult for a patient in that state of mind to understand complex issues such as this.

Q And this injury is consistent with his being in that condition?

A That's correct.

. . . .

A My first examination of [Licensee] was approximately 7:30 in the morning on November the ... 23rd, 1995 ...

Q And how was he in that regard?

A At that time it was my impression, I believe ... that I still felt that he may have been under the influence of alcohol to some extent....I think he had been up most of the night, and I think he had some post concussive effects also.

. . . .

Q All right. And it's your testimony that you believe that [Licensee], at least at the time you saw him, was suffering the effects of being under the influence of alcohol, correct?

A I would think so. His alcohol level at the time he was admitted to the hospital, I have an alcohol dated 11/23/95 at 10 minutes after 12, was 312. So I think, without a doubt, that he was, at least part of his cognitive impairment was probably due to alcohol. And I'm sure part of it was due to his closed head injury.

. . . .

Q Doctor, the opinion that you stated during my questioning. Based on your knowledge of the injury itself, you believe that [Licensee] would not have been able to give a knowing and conscious response to such a request, that was because of the

injury itself, right? That was not based on the use of alcohol?

A I would think that there would be a significant contribution from the head injury in his inability to give an informed consent at that time. And from my experience treating patients that have undergone facial trauma, which I think is very extensive, patients commonly are just in a foggy state of mind whether or not they've been intoxicated. In addition to that I would have significant doubt as to whether he could give an informed consent on that.

(Deposition of Scott E. Celin, M.D., April 10, 1996, pp. 12–13, 14–15, 17, 20–21).

Reviewing the medical testimony as a whole, it is apparent that Dr. Celin never definitively stated an opinion that Licensee's injuries rendered him incapable of making a knowing and conscious refusal of chemical testing. Moreover, Dr. Celin's testimony obviously suggests that Licensee suffered a cognitive impairment from both his injuries *and* his alcohol consumption. Indeed, one of his directly relevant opinions that most approaches unequivocality is that Licensee at least in part suffered a cognitive impairment from his alcohol consumption. It cannot be concluded from the testimony that the relationship between an impairment from Licensee's consumption of alcohol and his refusal of chemical testing was severed.

In light of these circumstances, we must consider the following holding of this Court:

> [T]he common pleas court erred in sustaining [Licensee's] appeal because [his medical expert's] opinion does not constitute competent evidence upon which to base the conclusion that [Licensee] sustained his burden of proving that his inability to make a knowing and conscious refusal of the test *was not related in part to his voluntary consumption of alcohol.* Moreover, reviewing [the expert's] testimony in full dictates the opposite . . .

*Plotts v. Department of Transportation, Bureau of Driver Licensing,* 660 A.2d 133, 137 (Pa.Cmwlth.1995) (emphasis added). *See also Gombar v. Department of Transportation,* 678 A.2d 843 (Pa.Cmwlth.1996), *petition for allowance of appeal denied,* —— Pa. ——, —— A.2d —— (1997) (a licensee's affirmative

defense fails if his inability to make a knowing and conscious refusal of testing was caused in whole or in part by the consumption of alcohol); *see also Monsay.*

Applying the case law to the record here thus compels us to conclude that Licensee's suspension must be reinstated.

Accordingly, the trial court's order is reversed.

### ORDER

AND NOW, this 29th day of September, 1997, the order of the Court of Common Pleas of Allegheny County, No. SA 153 of 1996, dated October 24, 1996, is hereby reversed.