**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: THE ESTATE OF ELLESMERE FARRELL, A/K/A ELLESMERE MCGUIRE FARRELL, A/K/A ELLESMERE CECELIA FARRELL A/K/A/ MRS. FRANK P. FARRELL A/K/A ELLESMERE M. FARRELL A/K/A CORNELIA BARRY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: LAND TYCOON, INC. | |
| | No. 1311 EDA 2014 |

Appeal from the Order Entered on March 25, 2014
In the Court of Common Pleas of Wayne County
Civil Division at No.: 28-O.C.D.-1987

BEFORE:  MUNDY, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                  **FILED FEBRUARY 20, 2015**

Land Tycoon, Inc. ("LTI"), challenges the trial court's March 25, 2014 order rescinding that court's December 12, 2013 order.  The December 12, 2013 order reopened the Estate of Ellesmere Farrell ("the Estate") to enable the Estate's personal representative, Honesdale National Bank ("HNB"), to execute a settlement with LTI concerning certain real property to which the Estate held fractional title, but which had not been accounted for in the prior probate proceedings concerning the Estate.  We affirm.

The Estate was finally accounted for, its assets disposed of, and executor Honesdale National Bank discharged in 1991.[1]  However, on

---

[1]  The Estate was reopened in 1998 for reasons that are immaterial to the instant appeal.

December 12, 2013, LTI filed a petition in the Wayne County Court of Common Pleas to reopen the Estate. Therein, it averred that it had purchased a property known as "Tunnel Road, Denison Township, Luzerne County" ("the Property") at a Luzerne County tax sale on September 20, 2012. Petition to Reopen Estate, 12/12/2013, at 1 ¶4. After tracing the lineage of the Property, LTI averred in relevant part that a 1/24 interest had passed to, and remained the property of, the Estate. LTI also averred that, in a separate quiet title action in Luzerne County, an order had been entered quieting title to the Property. LTI averred that HNB had no objections to the entry of an order by the trial court to resolve "the remaining claim of the [1/24] interest" of the Estate against the Property. *Id.* at 2 ¶ 10. LTI indicated that it would make a fair settlement offer to the Estate for a quitclaim deed in LTI's favor for the Estate's interest in the property. *Id.* at 2 ¶ 11.

LTI attached to the petition a Judgment and Order from the Luzerne County Court of Common Pleas that entered judgment quieting title to the Property as against seventeen named parties and their heirs and assigns, unless any such party should file exceptions within thirty days of the entry of the order. That order specifically provided that it "shall not affect the interest of any of the heirs of Ellesmere Farrell. The interest of the heirs of Ellesmere Farrell shall re[t]ain the same interest in the [P]roperty [that they held] prior to this court order, until further order of court." Luzerne County Court of Common Pleas Judgment and Order, 11/4/2013, at 2.

- 2 -

On December 12, 2013, the trial court convened a hearing concerning LTI's petition, at which appeared counsel for LTI and Charlie Curtin, a representative of HNB. In a brief proceeding, LTI and HNB represented, and the trial court took at face value, that reopening the Estate for purposes of disposing of its 1/24 share of the Property served everyone's interests. Mr. Curtin testified as follows:

> [T]he bank is happy to assist [LTI] in getting the transfer of the deed; however, we don't want to—it'd be more costly for the bank to go through formal stay proceedings. We would just like the ability to do this without re-raising an estate, notifying the heirs, we would like to—[LTI] to take care of all that . . . we can sign off on the deed; however, we're just thinking it would be more time and expense on our part for one twenty[-]fourth of a piece of property.

Notes of Testimony ("N.T."), 12/12/2013 (transcript undated), at 3-4 (ellipsis in original). Neither LTI nor Mr. Curtin offered any indication, express or implied, that the Luzerne County tax sale and order quieting title that had led to the instant proceedings were subject to pending challenges by two women claiming an interest in the Property as heirs of the Estate.

The trial court entered an order granting LTI's petition. The order provided, in relevant part, as follows:

> 1. [The Estate] shall be reopened for the sole purpose of allowing [HNB to] execute a settlement with [LTI] and transfer [the Property,] in which the [E]state may hold a small interest.
>
> 2. [HNB] and [LTI] in their sole and absolute discretion shall enter into a settlement for [the Property] that is fair and equitable to the heirs of the [E]state and [LTI].

* * * *

- 3 -

4.     [HNB] shall not be required to recommence any formal estate proceedings with the Commonwealth of Pennsylvania or any other governmental body as a result of the transfer of [the Property] by [the Estate].

Order of Court, 12/12/2013, at 1.  Thereafter, LTI and HNB arranged to transfer the Estate's interest in the Property to LTI for the agreed-upon sum of $2500, with an additional $1000 to be paid by LTI to HNB as consideration for its work as personal representative of the Estate.  LTI and HNB completed the transaction, and LTI recorded the deed for the relevant interest in the Property.

On January 31, 2014, Colleen O'Neill and Patricia A. Warunek (when not identified individually, identified collectively as "the Descendants"), by and through counsel, filed a joint petition to set aside the trial court's December 12, 2013 order reopening the Estate.  Therein, they averred that they are lineal descendants and heirs of Ellesmere Farrell.  They averred that any property possessed by Farrell (*i.e.*, the Estate) had passed by operation of law to Farrell's heirs, including (but not limited to) the Descendants.

The Descendants averred that, on or about November 4, 2013, Warunek had filed a petition in Luzerne County to set aside the "upset tax sale" of the Property, alleging, *inter alia*, defective notice.  On November 20, 2013, O'Neill filed a parallel petition raising the same defects.  Although a hearing on the Descendants' petitions had been scheduled by the Luzerne County Court of Common Pleas for January 2, 2014, LTI asked the

Descendants to agree to a continuance to make way for a holiday vacation.[2]

The Descendants agreed to the continuance, but averred that, during their communications concerning the continuance, LTI made no mention of its "surreptitious actions in the Wayne County Court." Joint Petition to Set Aside Court Order, 1/31/2014, at 3 ¶ 15. The Descendants further alleged that LTI did not inform HNB of the Luzerne County actions regarding the Property before presenting the December 12, 2013 petition to reopen the Estate. The Descendants indicated that they had only become aware of the Wayne County action on or about January 15, 2014, when one or more of the Estate's heirs received notice from LTI of the sale and checks for their respective shares of the proceeds. Consequently, the Descendants argued that LTI had procured the order reopening the Estate "by omission at best," and without providing notice to the Descendants, whose claimed interests in the Property by then was known to LTI. *Id.* at 4 ¶¶ 20, 22-23.

On February 26, 2014, the Wayne County Court of Common Pleas held a hearing to consider the Descendants' petition to set aside that court's earlier order reopening the Estate at LTI's request. At the hearing, the court heard testimony from O'Neill, Warunek, LTI representative David Keller, and HNB representative Curtin. Although various potentially material factual

---

[2] The record contains no information regarding the ultimate resolution of the Descendants' Luzerne County actions.

disputes emerged during the course of testimony, ultimately the Descendants reached the following stipulation with LTI:

> One, [LTI] knew in October 2013 that [the Descendants] claimed to be heirs of Ellesmere Farrell.
>
> Two, in [Warunek's] Petition to Set Aside the Upset Tax Sale in Luzerne County she claimed to be an heir of G.L. and Arthur Barry.
>
> Three, in [O'Neill's] petition in Luzerne County to Set Aside the Upset Tax Sale she claimed to be an heir of Arthur Barry.
>
> In the original joint petition in this matter, the [Descendants] claimed to be heirs of Arthur Barry.
>
> In the amended petition in this matter, [the Descendants] claimed to be heirs of G.L. Barry.
>
> I'm down to #6 now. [LTI] did not inform . . . [the Descendants] of the Wayne County December 2013 Petition to Re-Open the Estate prior to [its] presentment.
>
> Number seven, HNB was not informed prior to execution of the settlement agreement at issue that [the Descendants] were opposing [LTI's] Quiet Title Action in Luzerne County.
>
> Number eight, HNB was not informed prior to execution of the settlement agreement that [the Descendants] filed Luzerne County actions to Set Aside the Upset Tax Sale.
>
> And finally, number nine, [LTI] did not inform [the Descendants] of the HNB settlement agreement or negotiations therefore, prior to the settlement agreement's execution.

N.T., 2/26/2014, at 53-54. The trial court also received briefs in support of the parties' respective positions.

On March 25, 2014, the trial court issued an opinion and order setting aside its earlier order reopening the Estate. The trial court explained its reasoning as follows:

At first blush, this case appeared to be simple, at least based upon what this [c]ourt knew prior to the execution of the December 12, 2013 Order. This [c]ourt relied on the following representations when issuing that [o]rder: A piece of [the Property] was found to belong to the heirs of the [E]state, apparently unbeknownst to those heirs and the personal representative of the [E]state. [The Property] was sold at a tax sale in Luzerne County in 2012. The purchaser of the [P]roperty, [LTI], then received the tax deed to the [P]roperty. Thereafter, [LTI] initiated an action to quiet title in Luzerne County. [LTI] had obtained a judgment to quiet title for 23/24[] of the [P]roperty. The remaining 1/24[] interest was owned by the [Estate].

[HNB] was appointed as personal representative of the [Estate,] which was filed here in Wayne County. No one informed this [c]ourt as to why the judgment to quiet title had not been entered as to the entirety of the shares. Therefore, this [c]ourt presumed, but never stated on the record, that [the] inability to effectuate service had been a reason the remaining 1/24[] was not included in the judgment to quiet title. Counsel gave no reason for this [c]ourt to think otherwise. This was a found asset in the [E]state, and the heirs would be assured a fair price, as provided for in this [c]ourt's order. Given the heirs' modest interest in the [P]roperty, this appeared to be a straightforward way of handling a fair disposition of the [P]roperty. However, appearances can be deceiving.

The personal representative of an estate may sell, at a public or private sale, any real property not specifically devised by the will, if any. 20 Pa.C.S. § 3351. The heirs, with all things being equal, were not entitled to notice before the sale. Nevertheless, all things were not "being equal." This [c]ourt should have been advised by counsel that the quiet title action in Luzerne County was *contested*, and those contesting it were *heirs of* [*the Estate,* i.e., *the Descendants*]. Had this [c]ourt been so informed, this [c]ourt would have deferred the matter to the Luzerne County action.

Upon that decision, [the Descendants] would have had the tax sale either overturned or confirmed. If confirmed, there would have been no legitimate basis to challenge the conveyance, except if the agreed[-]upon price was not reasonable. If not confirmed, then the [E]state would have owned a 1/24[] interest and administered that interest in the appropriate manner.

- 7 -

> The record discloses that [the Descendants] filed their objection to the Luzerne County quiet title action in November of 2013. Prior to the filing of [its] petition to reopen the [E]state, [LTI] and its counsel knew of [the Descendants'] objections. It is evident that [LTI's] Petition to reopen the [E]state sought to do through the back door what it could not do through the front door, specifically, adjudicate the rights of the [Descendants] without giving them notice.

> This was not a case where the [Descendants] were simply beneficiaries coming into found money; they had affirmatively, and on the record, given notice of their objections to the quiet title action in Luzerne County. As such, they were surely entitled to notice of a proceeding which would divest them of their standing to continue to contest the quiet title action. "Due process requires that a party who will be adversely affected by a court order must receive notice and a right to be heard in an appropriate hearing." *McKinney v. Carolus*, 634 A.2d 1144, 1146 (Pa. Super. 1993).

> Counsel for [LTI] goes to great lengths to defend *his* actions in this case. It matters not whether [LTI's] attorney knew of the "back door" maneuver in order to reach [t]his decision. The fact remains that under the present facts, [the Descendants] were denied due process.

Trial Court Opinion, 3/25/2014, at 2-3 (citation modified; emphasis in original).

LTI filed the instant timely appeal on April 23, 2014. The trial court responded the same day by entering an order directing LTI to file a concise statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). LTI timely complied on May 9, 2014. Therein, LTI contended that, by operation of 42 Pa.C.S. § 5505, the trial court lost jurisdiction to modify or rescind its December 12, 2013 order on the thirty-first day after that order issued, which passed long before the trial court

issued its March 25, 2014 opinion and order purporting to rescind the earlier order.

In its Rule 1925(a) opinion, the trial court offered two theories in support of its prerogative to revisit its December order greater than thirty days after its issuance. First, the trial court suggested that the December order, because it **reopened** the Estate, did not constitute a final order under Pa.R.A.P. 341, and therefore did not fall within the ambit of section 5505's prohibition. In the alternative, the trial court relied upon the bases set forth in its earlier opinion, *supra*—that LTI's misleading conduct, in having deprived the Descendants of their rights to due process, qualified this case for the recognized, if narrow, equitable exception under which a trial court may modify or rescind its orders even after the expiration of thirty days.

Before this Court, LTI raises the following issues:

1. Was the [trial court's] December 12, 2013 Order a Final Order?

2. Did the [trial court] have [j]urisdiction to void its December 12, 2013 [order] more than 30 days after its entry and more than 30 days after the completion of the sale?

Brief for LTI at 5 (unnumbered).[3] However, in its brief LTI only presents legal argument in support of that latter question, which arguably constitutes

---

[3] On October 22, 2014, counsel for Ms. Warunek filed in this Court a letter indicating the he would not file a brief on Ms. Warunek's behalf because she had entered into a settlement and release with LTI. Counsel for Ms. Warunek also requested that the trial court's March 25, 2014 order underlying this appeal be rescinded and the orphans' court's prior December

*(Footnote Continued Next Page)*

waiver of the first issue as stated. *See* Pa.R.A.P. 2119(a). Nonetheless, because both issues implicate the trial court's subject matter jurisdiction, we will address them both in turn. *See LeFlar v. Gulf Creek Indus. Park No. 2*, 515 A.2d 875, 879 (Pa. 1986) ("The lack of jurisdiction of the subject matter . . . may be raised by the court *sua sponte* . . . ."). Jurisdictional questions are questions of law as to which our standard of review is *de novo* and our scope of review plenary. *See Commonwealth, Office of Atty. Gen. ex rel. Corbett v. Locust Twp.*, 968 A.2d 1263, 1268-69 (Pa. 2009).

In order to understand the final-order question, we first must consider LTI's argument in support of its second issue, which is based upon 42 Pa.C.S. § 5505. LTI contends that the trial court's March 25, 2014 order,

_(Footnote Continued)_ ———————

12, 2013 order be reinstated. However, nothing in this letter addresses Ms. O'Neill's interest in this matter. *See* Letter, 10/22/2014, at 1 ("I am writing to you **on behalf of my client, Patricia Warunek**. My client has agreed to settle this matter . . . with Land Tycoon, Inc. . . . .").

Although Ms. O'Neill did not file a brief in this matter, as an appellee she has no obligation to do so to preserve her underlying claims. *See Reif v. Reif*, 626 A.2d 169, 172 n.3 (Pa. Super. 1993) (citing Pa.R.A.P. 2188) ("[A]ppellees cannot be punished in any way for not filing briefs in cases which are submitted to this Court without argument . . . ."). Accordingly, we cannot speculate that Ms. O'Neill was a party to the settlement, or that she intends to abandon her claim. Moreover, over a month later, on December 3, 2014, this Court issued to the parties a letter confirming that this case had been submitted on the briefs, but Ms. O'Neill in no way signaled her desire to discontinue her case. Under these circumstances, we can neither discontinue this appeal nor direct the trial court to reinstate its prior order, which served to protect the interests of **both** Ms. Warunek and Ms. O'Neill. That being said, this memorandum is without prejudice to Ms. Warunek and/or Ms. O'Neill to discontinue the matter before the orphans' court upon remand.

in following by more than thirty days the December 12, 2013 order it purported to rescind, was entered in violation of 42 Pa.C.S. § 5505, which provides as follows:

> Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa.C.S. § 5505. Section 5505 must be read in tandem with section 5504, which provides as follows:

> **(a) General rule.—**Except as provided in section 1722(c) (relating to time limitations) or in subsection (b) of this section, the time limited by this chapter shall not be extended by order, rule or otherwise.
>
> **(b) Fraud.—**The time limited by this chapter may be extended to relieve fraud or its equivalent, but there shall be no extension of time as a matter of indulgence . . . .

42 Pa.C.S. § 5504. Critically, though, section 5505 applies to this case only if the order the trial court rescinded was a final order. *See Mente Chevrolet, Oldsmobile, Inc., v. Swoyer*, 710 A.2d 632, 633 (Pa. Super. 1998) (citing *Hutchison by Hutchison v. Luddy*, 611 A.2d 1280 (Pa. Super. 1992)).

The trial court found that its December 12, 2013 order, in reopening the Estate, did not constitute a final order, ostensibly because, while it opened the Estate, it did not close it. Our appellate rules provide, in relevant part, as follows:

**Rule 341. Final Orders; Generally**

**(a) General rule.** Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

**(b) Definition of a final order.** A final order is any order that:

(1)     disposes of all claims and of all parties; or

(2)     is expressly defined as a final order by statute . . . .

Pa.R.A.P. 341.

In light of the plain terms of Rule 341, the trial court's submission that its December 12, 2013 order was not a final order is at least colorable. The order in question reopened the Estate. Although it did so for a "limited" purpose, nonetheless the Estate was opened, and no action that followed necessarily effectuated its closing. However, the trial court's December 12, 2013 order also provided as follows: "[HNB] shall not be required to recommence any formal estate proceedings with the Commonwealth of Pennsylvania or any other governmental body as a result of the transfer of [the Property] by [the Estate]." Order of Court, 12/12/2013, at 1 ¶ 4. In specifying that no further action would be required after the Estate's interest in the Property was liquidated and any heirs compensated for their share of that interest, the court left open little prospect of further proceedings regarding the Estate, at least in the instant connection. Thus, were we to credit the trial court's reasoning, we would effectively have put its December 12, 2013 order beyond the reach of appellate review in perpetuity, an untenable result.

This does not conclude our assessment of finality. Although the trial court in this case does not identify itself as sitting in its orphans' court jurisdiction, the docket for this case originates in the administration of the Estate in the Orphans' Court division of the Wayne County Court of Common Pleas. Accordingly, we presume that the trial court in the instant case sat in its Orphans' Court capacity.[4] Consequently, Pa.R.A.P. 342 ("Appealable Orphans' Court Orders") merits review. Rule 342(a)(6) provides for an immediate appeal as of right from an Orphans' Court order "determining an interest in real or personal property." Rule 342(c) further provides that the "[f]ailure to appeal an order that is immediately appealable under paragraphs (a)(1)-(7) of this rule shall constitute a waiver of all objections to such order." Consequently, we assume, *arguendo*, that the December 12, 2013 order was final for purposes of appeal. As such, we assume without deciding that the order is subject to the provisions of 42 Pa.C.S. § 5505.[5]

_____

[4] At least arguably, this would be required by 20 Pa.C.S. § 711, which confers mandatory jurisdiction over the administration of an estate upon the Orphans' Court.

[5] We refrain from deciding this issue conclusively because the issue is not squarely presented or argued, and our research discloses no case integrating Rule 342 and section 5505 in this fashion. However, given section 5505's plain language and the stringency with which our Courts have applied any exceptions thereto, it would be illogical for it not to apply to orders that are deemed final for purposes of appeal.

In support of its strict reading of sections 5504 and 5505 wherein, putatively, **only** a showing of fraud will enable a court to rescind a prior order greater than thirty days after its entry, LTI cites **Commonwealth, Dep't of Transp., Bureau of Driver Lic. v. Duncan**, 601 A.2d 456 (Pa. Cmwlth. 1991), and **Board of Supervisors of Chartiers Twp. v. Quarture**, 603 A.2d 295 (Pa. Cmwlth. 1992).[6]   However, both cases acknowledged that circumstances other than fraud may warrant trial court action outside section 5505's thirty-day limitation.

In **Duncan**, for example, the court observed that, after the expiration of section 5505's time limit, "a court may vacate, amend or modify its order only if extraordinary cause exists":

> Only grave and compelling circumstances provide "extraordinary cause" to justify court intervention after expiration of the appeal period.  Such circumstances have customarily entailed an oversight or act by the court, or failure of the judicial process, which operates to deny the losing party knowledge of entry of final judgment and commencement of the running of the appeal period.

601 A.2d at 459 (quoting **DeMarco v. Borough of East McKeesport**, 556 A.2d 977, 979 n.4 (Pa. Cmwlth. 1991)).  In **Quarture**, to much the same effect, the Commonwealth Court explained as follows:

> It is well[-]settled that the courts of this Commonwealth possess inherent power to act where equity so demands.  In such

---

[6]   Although we may consult Commonwealth Court opinions for their persuasive value, those decisions do not bind this Court.  **Petow v. Warehime**, 996 A.2d 1083, 1088 n.1 (Pa. Super. 2010).

situations, the power of the court to open and set aside its judgments may extend beyond the expiration of the appeal period. The discretionary power of the court over such judgments is, however, very limited. Generally, judgments regularly entered in adverse proceedings cannot be opened or vacated after they have become final, unless there has been fraud or some other circumstances so grave or compelling as to constitute extraordinary cause justifying intervention by the court. Such circumstances have customarily entailed an oversight or act by the court, or failure of the judicial process, [that] operates to deny the losing party knowledge of entry of final judgment and commencement of the running of the appeal period.

603 A.2d at 298099 (quoting *Dep't of Transp., Bureau of Driver Lic. v. Axsom*, 598 A.2d 616, 619 (Pa. Cmwlth. 1991); citations and internal quotation marks omitted); *accord ISN Bank v. Rajaratnam*, 83 A.3d 170, 172 (Pa. Super. 2013) (holding that, following the expiration of the thirty-day time limit, "the trial court may exercise discretion to modify an order only upon a showing of extrinsic fraud, lack of jurisdiction over the subject matter, a fatal defect apparent on the face of the record **or some other evidence of extraordinary cause justifying intervention by the court**" (emphasis added; internal quotation marks omitted)).

The trial court's ruling, in effect if not explicitly, was based upon a combination of extraordinary cause and deceit, if not outright fraud by omission. LTI disregards the trial court's implicit finding that LTI committed a fraud upon the trial court, or something very nearly approaching one. *See* 42 Pa.C.S. § 5504 (allowing a court to extend the section 5505 time limit "to relieve fraud **or its equivalent**" (emphasis added)). In so doing, LTI effectively concedes the point. Moreover, the trial court's findings in this

- 15 -

regard are consistent with facts that LTI stipulated, as set forth *supra*, including its acknowledgment that it was aware of the Descendants' pending challenge to the tax sale when it asked the trial court to reopen the Estate, effectively for purposes of subverting the pending Luzerne County action. Moreover, LTI conceded that it recognized the Descendants' claims to be heirs of the Estate, but provided no notice to them of the Wayne County action. Thus, LTI effectively admits that the trial court had a sound basis for determining that its lack of awareness of the contemporaneous actions in Luzerne County concerning the Property was intended or at least abetted by LTI, rendering the lack of notice to the Descendants of the opening of the Estate for purposes of disposing of the Property while its disposition was contested in Luzerne County violative of the Descendants' rights to due process. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). In failing to address these undisputed circumstances, and in furnishing no case law to contradict the trial court's basis for ruling as it did, LTI's argument is unavailing. *Cf. First Union Mortgage Corp. v. Frempong*, 744 A.2d 327, 334-35 (Pa. Super. 1999) (affirming reopening of summary judgment after five years due to the opposing party's "profusion of

dilatory tactics" and because "equity demanded at least the opening of the judgment in this extraordinary case of abuse of our legal system").

LTI's related argument that the settlement it reached with HNB was fair and reasonable fails, because it puts the cart before the horse. While LTI is correct that 20 Pa.C.S. § 3351 authorizes an estate's representative to dispose of estate property without notice to the heirs, the problems animating the trial court's order in this case logically precede any consideration of the fairness of LTI's and HNB's disposition of the Property, inasmuch as the Property would not have been theirs to dispose of if one or more of the Descendants' Luzerne County actions were to prevail. Because the Descendants were challenging in Luzerne County the tax sale and LTI's effort to quiet title when LTI sought to cut off the Descendants' interest in the Property in the trial court, the Wayne County action had the effect of eliminating the Descendants' standing in the Luzerne County actions without notice and the opportunity to be heard, implicating the very due process considerations cited by the trial court in supporting its decision to rescind the December 12, 2013 order.[7]

_____

[7] We acknowledge that, regardless of the outcome of Ms. O'Neill's Luzerne County cases, if any, **see** supra n.3 (noting Ms. Warunek's withdrawal from this appeal per her settlement agreement with LTI), her interest in the Property necessarily is mediated by HNB as personal representative of the Estate, and that, all things being equal, HNB will retain the prerogative to dispose of the Estate's interest in the Property even if one or more of Ms. O'Neill's challenges succeed. However, a number of potential contingencies implicate Ms. O'Neill's due process rights. First, should she
*(Footnote Continued Next Page)*

Perhaps some more robust substantive argument in support of LTI's position may lie. But the trial court's finding that due process was denied the Descendants on its face is equitable under the circumstances. Moreover, LTI simply mounts no principled challenge to that dispositive aspect of the trial court's reasoning.[8] This Court will not advocate on behalf of a party

_(Footnote Continued)_ _____

succeed in setting aside the tax sale, then LTI ostensibly will have no title to the 23/24 share of the Property it secured in its quiet title action. The same would be true in the event that Ms. O'Neill were to prevail in her challenge to LTI's action to quiet title. Were that the case, then LTI might have no interest in securing Ms. O'Neill's share, such that HNB would have no buyer, and might, upon request, transfer the Property to Ms. O'Neill and other heirs in kind. It is plausible, then, that Ms. O'Neill, perhaps in tandem with other heirs not party to this action, might raise the funds necessary to free the Property from its tax arrears, thus freeing it for sale on the open market or to be retained by one or more of the heirs. Needless to say, such considerations are highly speculative, especially because we lack information about the status of the pending Luzerne County actions. But the above considerations satisfy us that Ms. O'Neill has an interest in the Property entitling her to due process that would be denied her if her standing to press her Luzerne County actions were compromised by HNB's transfer of the Property to LTI.

[8] This Court also has suggested that among the factors militating against an extension of the section 5505 time limit is the "adversarial" nature of the proceedings. *See Orie v. Stone*, 601 A.2d 1268, 1270-71 (Pa. Super. 1992). The premise of this qualification is that a party should not be given more than thirty days to seek to interfere with a judgment when it has had the opportunity to be heard in the underlying proceedings. *Id.* Thus, in *Orie*, this Court distinguished a trial court's ongoing authority to revisit and open judgments by confession or default, which may be entered without notice to the party against whom such judgments are entered, from judgments entered following adversarial proceedings. *Id.* At least arguably, this case more resembles the latter category of actions than the former, further militating in favor of waiving section 5505's time limit under the circumstances of this case.

that has failed to do so, which is precisely what would be required to afford LTI relief from the trial court's ruling in this instance. ***See*** Pa.R.A.P. 2119(a); ***cf. In re Estate of Whitley***, 50 A.3d 203, 209 (Pa. Super. 2012) ("This Court will not consider the merits of an argument [that] fails to cite relevant case or statutory authority."). Accordingly, this claim, too, does not warrant relief.

Order affirmed.

Judge Mundy concurs in the result.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/20/2015